UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JON CHRIST,

        Plaintiff,

    v.

R. BLACKWELL, et al.,

        Defendants.

No.  2:10-cv-0760-EFB P

ORDER

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.[1]  Currently pending are: (1) defendants' response to the court's December 3, 2015 order to show cause (ECF No. 194); (2) defendants' motion for summary judgment (ECF No. 193); and (3) various motions and objections filed by plaintiff in response to the motion for summary judgment (ECF Nos. 197, 199, 204-206).  For the following reasons, the court will impose sanctions on defense counsel for failing to adhere to the schedule without good cause, deny plaintiff's motions, and grant the motion for summary judgment in part and deny it in part.

////

////

/////

---

[1] The case is before the undersigned by the consent of the parties.  ECF Nos. 4, 14, 134.

1

1    I.    **Defendants' Response to the Order to Show Cause**

2          **A. Background**

3          Plaintiff filed this action in Santa Clara County Superior Court on January 5, 2010.  ECF

4    No. 1-1.  Defendants removed the case to federal court.  ECF No. 1.  The case progressed through

5    discovery, and defendants allowed the dispositive motion filing deadline (April 22, 2011) to pass

6    without filing a motion to dismiss or a motion for summary judgment.  ECF No. 19.  In May

7    2013, after reviewing the pretrial statements filed by the parties, the court discovered that two

8    named defendants – Weiglein and Roszko – had not responded to the complaint.  *See* ECF No.

9    101.  Plaintiff informed the court that he was pursuing his claims against Weiglein in a separate

10   action and the court accordingly dismissed Weiglein from this action.  ECF No. 106.  After a long

11   process that need not be recounted here (*see id.* at 2), defendant Roszko was properly served with

12   the complaint.  ECF No. 135.  The court then issued a revised schedule governing discovery and

13   dispositive motions "so that plaintiff and defendant Roszko may engage in discovery and pretrial

14   motions with respect to plaintiff's claims against defendant Roszko."  ECF No. 145 at 1.

15         On December 30, 2014, defendants filed a motion for summary judgment addressing all of

16   plaintiff's claims against all defendants.  ECF No. 159.  Defendants did not seek relief from the

17   schedule that governed all of them except Roszko, under which the dispositive motion filing

18   deadline had passed.  ECF No. 19 (providing a dispositive motion deadline of April 22, 2011).

19   Defendants argued that that they filed a motion addressing all claims against all defendants

20   because they "were unable to determine which claims or causes of actions were directed to which

21   defendant."  ECF No. 161.  The court found this representation disingenuous.  Because

22   defendants Blackwell, Broyles, Lopez, Voight, and Zuniga did not show good cause why they did

23   not seek summary judgment on or before April 22, 2011, the court declined to consider their

24   arguments.  ECF No. 176 at 2-3 (citing Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified

25   only for good cause and with the judge's consent.") and *Johnson v. Mammoth Recreations, Inc.*,

26   975 F.2d 604, 608 (9th Cir. 1992) (holding that a motion to modify the schedule must be

27   supported by a showing of good cause; i.e., that the schedule could not have been met despite the

28   moving party's diligence)).  The court noted that, if these defendants wished to seek summary

1   judgment on plaintiff's claims against them, they were required to file a motion for modification

2   of the schedule, supported by a showing of good cause.  *Id.*

3        Defendants filed such a motion.  ECF No. 179.  The court concluded that the non-Roszko

4   defendants had not shown good cause for their failure to comply with the April 22, 2011

5   dispositive motion deadline.  ECF No. 190.  Nevertheless, the court allowed these defendants to

6   file a motion for summary judgment outside that deadline because the court cannot waste

7   resources trying claims that may be resolved on summary judgment.  *Id.*  The court ordered

8   defense counsel to show cause why they should not be sanctioned for violating the scheduling

9   order.  *Id.*  The court has received counsel's response.  ECF No. 194.

10        **B.  Analysis**

11        Federal Rule of Civil Procedure 16(f) provides that the court may, on its own motion,

12   issue "any just order," including sanctions, where a party "fails to obey a scheduling order."  In

13   the response to the order to show cause, defense counsel states that they allowed the April 22,

14   2011 deadline to pass in a "good faith—although obviously mistaken—assumption about how to

15   best proceed in an effort to save the Court's time and resources."  ECF No. 194 at 1.  According

16   to counsel, they knew that defendant Roszko might eventually be served and were waiting until

17   that time to file a summary judgment motion addressing plaintiff's claims against all defendants.

18   *Id.* at 2.

19        The court has reviewed the docket in this action and finds defense counsel's proffered

20   reason for allowing the dispositive motion deadline to pass difficult to believe.  To credit

21   counsel's story, the court would have to believe that counsel was willing to forego filing a

22   potentially successful summary judgment motion on behalf of five defendants because there was

23   a chance that a sixth defendant (who had not been served and was not participating in the case)

24   would later be given an opportunity to file such a motion.  If defense counsel had truly wanted to

25   save the court's time by filing a single motion for all defendants, counsel could have alerted the

26   court to the fact that plaintiff's attempt to serve Roszko prior to removal had been unsuccessful

27   and resolved the question of whether he would be added to the case before the April 22, 2011

28   deadline passed (by, for example, filing a motion to dismiss Roszko under Federal Rule of Civil

1   Procedure 4(m)).  It appears that, instead, counsel hoped that plaintiff and the court would not

2   notice Roszko's sudden disappearance from the case and that the case would conclude without his

3   further participation.  Once that was no longer possible, counsel tried to piggyback a now-

4   extraordinarily-late motion for summary judgment for the five pre-existing defendants onto

5   defendant Roszko's motion.

6        Defense counsel's conduct placed the court in the untenable position of either dispensing

7   with Rule 16's good cause standard or holding a possibly needless trial.  The court's docket is far

8   too impacted to allow a case to proceed to a jury trial when it could have been resolved by

9   summary judgment.  But the court must ensure that parties adhere to schedules or provide good

10  cause when they depart from them.  Accordingly, the court will impose monetary sanctions of

11  $500 jointly and severally on current defense counsel Jeffrey E. Beeson, Michael A. Terhorst, and

12  Beeson Terhorst LLP.

13  **II.        Plaintiff's Motions and Objections to the Motion for Summary Judgment**

14       Plaintiff has filed a number of objections to defendants' motion for summary judgment

15  and requests that the court deny the motion for technical reasons.  ECF Nos. 197, 199, 204-206.

16  Plaintiff contends that defendants violated the court's order that their motion be filed within 30

17  days of December 3, 2015.  ECF Nos. 197, 199, 204, 206.  The docket in this action shows that

18  defendants filed the notice to plaintiff informing him of his obligations in responding to the

19  motion, the points and authorities in support of the motion, the exhibits, and the statement of

20  undisputed facts on December 28, 2015, within the 30-day deadline.  ECF No. 193.  Defendants

21  served these same documents by mail the same day.  However, the 3-paragraph notice of motion

22  was not filed until January 8, 2016, for reasons defendants have not explained.  ECF No. 195.

23       Defendants filed the substantive portions of their summary judgment motion within the

24  30-day time limit set by the court.  While the notice of motion was filed four days outside the 30-

25  day window, plaintiff has not shown that the tardy notice caused him any prejudice.  Accordingly,

26  plaintiff's request that the court deny the motion for summary judgment due to untimeliness is

27  denied.

28  /////

1    Plaintiff argues that defendants were late in responding to the court's order to show cause.

2    ECF No. 197.  The docket shows that defendants timely filed their response on December 28,

3    2015.  ECF No. 193.

4    Plaintiff also objects that defendants have not been consistent in including defendant

5    Roszko's name in various places in the motion for summary judgment.  ECF No. 199.  Plaintiff is

6    aware that defendant Roszko has already been granted summary judgment.  ECF No. 176.

7    Defendants' lack of care in listing the defendants who now seek summary judgment is not a basis

8    for denying the motion.

9    Plaintiff further requests that the court deny the motion because defendants have not filed

10    a reply brief.  ECF No. 205.  While reply briefs are almost always helpful, and when submitted

11    must be filed timely, defendants were not obligated to file a reply brief.  E.D. Cal. L.R. 230(d)

12    (the moving party "may" file a reply, but is not required to).

13    Lastly, plaintiff "requests to settle this case."  ECF No. 205 at 2.  One of plaintiff's claims

14    survives summary judgment (see below).  Accordingly, the court will refer the case to a

15    randomly-assigned magistrate judge for a settlement conference.

16    **III.    Defendants' Motion for Summary Judgment**

17    **A.  General Summary Judgment Principles**

18    Summary judgment is appropriate when there is "no genuine dispute as to any material

19    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

20    judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

21    to the determination of the issues in the case, or in which there is insufficient evidence for a jury

22    to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

23    (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

24    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

25    motion asks whether the evidence presents a sufficient disagreement to require submission to a

26    jury.

27    The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

28    or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

1    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

2    trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.

3    Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary

4    judgment practice, the moving party bears the initial responsibility of presenting the basis for its

5    motion and identifying those portions of the record, together with affidavits, if any, that it

6    believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323;

7    *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets

8    its burden with a properly supported motion, the burden then shifts to the opposing party to

9    present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*,

10   477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

11        A clear focus on where the burden of proof lies as to the factual issue in question is crucial

12   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

13   summary judgment does not necessarily need to submit any evidence of its own.  When the

14   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

15   need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National*

16   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

17   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

18   24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

19   summary judgment motion may properly be made in reliance solely on the 'pleadings,

20   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

21   should be entered, after adequate time for discovery and upon motion, against a party who fails to

22   make a showing sufficient to establish the existence of an element essential to that party's case,

23   and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a

24   circumstance, summary judgment must be granted, "so long as whatever is before the district

25   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

26   satisfied."  *Id*. at 323.

27        To defeat summary judgment the opposing party must establish a genuine dispute as to a

28   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead

1   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

2   *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary

3   judgment.

4        Concurrent with the motion for summary judgment, defendants advised plaintiff of the

5   requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

6   ECF No. 193-2; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d

7   952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*,

8   849 F.2d 409 (9th Cir. 1988).

9               **B.  The Parties' Factual Assertions**

10                  **1.  <u>The Complaint</u>**

11        Plaintiff's verified complaint alleges as follows:  On May 1, 2008, plaintiff went to the

12   Facility 4 Medical Annex at California State Prison, Solano ("CSP-Solano") and presented a blue

13   medical pass to defendant, correctional officer Broyles.  ECF No. 1-1 at 4.  Broyles voided the

14   pass and ordered plaintiff to return to his building.  *Id.*  Despite being in severe pain, plaintiff

15   complied.  *Id.*  Before leaving, however, plaintiff told Broyles that if Broyles again failed to call

16   plaintiff's building for plaintiff to pick up his pain medication, plaintiff would file a staff

17   complaint.  *Id.* at 4-5.  Thereafter, whenever Broyles saw plaintiff, he would whistle.  *Id.* at 5.

18   Allegedly, this was Broyles's way of letting a prisoner know that he was targeting the prisoner.

19   *Id.*  Plaintiff claims that Broyles then retaliated against plaintiff by filing a false CDC form 128-B

20   informative chrono[2] documenting that plaintiff had threatened to sue him and was trying to

21   manipulate and provoke him.  *Id.* at 5.

22        On February 9, 2009, plaintiff returned to prison from an outside hospital and headed to

23   the dining hall.  *Id.* at 6.  Defendant correctional officer Lopez called plaintiff from the line and

24   said, "You already ate, Christ.  Go back to your building."  *Id.*  Plaintiff told Lopez that he had

25   not eaten but had just returned from the hospital and had gone to get his medication before eating

26   because he was in extreme pain from surgery.  *Id.*  Nevertheless, Lopez denied plaintiff his

27

28        [2] A "chrono" is a document made by a prison official concerning an inmate and placed in the inmate's file.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1205 n.1 (9th Cir. 2012).

dinner.  *Id.*  Plaintiff told Lopez he would file a staff complaint against him.  *Id.*  Plaintiff claims that Lopez retaliated by authoring a false CDC form 128-A counseling chrono documenting his version of the encounter and that plaintiff "constantly attempts to intimidate staff with legal action."  *Id.* at 7.  Plaintiff responded by filing a grievance against Lopez.  *Id.* at 7-8.  At the grievance's second level of review, the warden removed the 128-A from plaintiff's file and made Lopez apologize to plaintiff.  *Id.* at 8.

Defendant correctional officers Blackwell and Voight allegedly retaliated against plaintiff for his grievance against Lopez by transferring plaintiff to an upper bunk in violation of plaintiff's medical chrono and an injunction issued by Judge Claudia Wilken.  *Id.*  In collusion with Blackwell and Lopez, Voight authored a false CDC form 115 disciplinary report accusing plaintiff of obstructing a peace officer by faking illness to avoid the move.  *Id.*  As investigative employee for the hearing on the disciplinary report, defendant correctional officer Zuniga refused to interview plaintiff's witnesses, who would have established that the report was bogus and that plaintiff actually had been sick.  *Id.* at 11.  Plaintiff claims that Zuniga refused because he was colluding with Voight to ensure a guilt finding.  *Id.*

### 2.  **Defendants' Proffered Facts**

On May 7, 2008, defendant Broyles issued a CDC form 128-B chrono documenting his dealings with plaintiff when plaintiff complained about a long line and a delay in calling his building for administration of medication.  ECF No. 193-3, Defendants' Undisputed Material Facts ISO Mot. for Summ. J. (hereinafter, "DUF") No. 25.  The chrono stated:

> On 05-01-2008, approximately 1835 hours, while working as Medical Annex Officer, I called on my institutional radio for the release of Diabetic inmates.  I observed Inmate Christ . . . walking towards the diabetic line.  I told Christ only inmates from 19 building [were released] and wait to be called.  Inmate Christ stated "If you don't call me I will file a lawsuit against you."  He then returned to his building.  On another occasion Christ made a statement that I did not like Veteran's [sic], because I denied him access to the Education Building.  I feel Christ is trying to provoke me into some type of altercation.  I think Christ thinks he does not have to follow the rules and regulations other inmates have to follow. He tries to manipulate staff and continues to question authority.

DUF No. 24.

*/////*

9

1   Plaintiff responded by filing a grievance against Broyles in which he claimed that Broyles

2   treated him rudely and was part of a scheme against him.  DUF No. 25; ECF No. 193-1 at 54.

3   The grievance was denied.  DUF No. 25; ECF No. 193-1 at 54.

4   Defendants do not dispute that defendant Lopez erroneously ordered plaintiff to return to

5   his housing unit without dinner on February 9, 2009.  DUF No. 19.  Lopez mistakenly believed

6   that plaintiff had already eaten because he saw him coming from the medical annex, where he and

7   others in his housing unit normally went after eating dinner.  *Id.*  Defendants claim that plaintiff

8   did not tell Lopez that he was returning from an outside hospital and had not eaten.  *Id.*  The

9   parties also do not dispute that the informative chrono Lopez wrote about the incident was

10  removed from plaintiff's file after plaintiff grieved the incident.  DUF No. 21.  According to

11  defendants, there is no evidence that plaintiff suffered any other adverse action as the result of the

12  chrono or that Lopez authored the chrono for an improper purpose.  DUF Nos. 22-23.

13  According to defendants, plaintiff told defendant Lopez on April 29, 2009 that he did not

14  want to move to a new facility not because he was sick, but because he had had a fight in the

15  other facility years earlier.  DUF No. 9.  Lopez checked with defendant Blackwell and then told

16  plaintiff that he had to move.  *Id.*  Plaintiff stalled and delayed packing his things.  *Id.*  When an

17  officer went to check on his progress, plaintiff was not in his bunk area.  *Id.*  Plaintiff walked out

18  of the bathroom holding his side while looking away from the officer.  *Id.*  Defendant Voight told

19  plaintiff he needed to pack because he was delaying two new arrivals assigned to the building.  *Id.*

20  During the next 20 minutes, plaintiff went back to the bathroom three times.  *Id.*  Voight again

21  told plaintiff to stop stalling.  *Id.*  An officer saw plaintiff going to the bathroom again.  *Id.*  Then

22  an inmate yelled to Voight that someone was lying on the bathroom floor.  *Id.*  Voight approached

23  plaintiff and saw him pull his finger out of his mouth in the manner for inducing vomiting.  *Id.*

24  Voight asked plaintiff if he needed medical attention, and plaintiff nodded yes.  *Id.*  Voight called

25  a medical code, and medical personnel arrived and evaluated plaintiff.  *Id.*  While being watched,

26  plaintiff did not vomit.  *Id.*  Nor had plaintiff sought medical attention before he was told to pack

27  his belongings.  *Id.*  Officers concluded that plaintiff had faked a medical issue to avoid moving.

28  *Id.*  Voight prepared a rules violation report.  DUF No. 6.

Plaintiff grieved the rules violation report and the resulting finding that he was guilty of impeding a peace officer. DUF No. 10. The grievance was denied. *Id.* The appeals reviewer concluded that plaintiff's claims that defendant Blackwell wished to retaliate against him for his grievance against Lopez was unsubstantiated, that defendant Zuniga had "addressed" all of plaintiff's requested witnesses, and that plaintiff had not provided any compelling evidence of retaliation. ECF No. 193-1 at 57.

Defendants concede that plaintiff was placed in the wrong bunk for three days. DUF Nos. 16-18.

## IV.   Plaintiff's Response to Defendants' Facts

Plaintiff contends that he was truly sick on the day of the cell move and has submitted evidence from witnesses who saw him sick. ECF No. 201 at 2, 4. He also states that defendant Lopez was not present on that day. *Id.* at 3-4.

According to plaintiff, defendant Zuniga did not interview any of his witnesses in connection with the disciplinary hearing. *Id.* at 5. He asks defendants to point to paperwork showing that Zuniga interviewed his witnesses. *Id.* at 7. (Defendants have filed no reply brief.)

Plaintiff also contends that he did, in fact, tell Lopez on February 9, 2009 that he was returning from an outside hospital. *Id.* at 5.

## V.   Analysis

Plaintiff's claims are of retaliation in violation of the First Amendment against defendants Blackwell, Broyles, Lopez, Voight, and Zuniga, and for violation of his right to due process in connection with his disciplinary hearing against defendant Zuniga. The court will address the claims in the chronological order in which the events they are premised on occurred.

### A. Plaintiff's Retaliation Claim against Broyles

Plaintiff claims that defendant Broyles unlawfully retaliated against him in May 2008 by authoring a false informative chrono after an interaction regarding plaintiff's pain medication. To establish this claim, plaintiff must prove: (1) that Broyles took some adverse action against him (2) because of (3) his protected conduct, (4) that such action chilled his exercise of his First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional

1   goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The plaintiff need not

2   demonstrate that his speech was actually inhibited or suppressed, but merely that the defendant's

3   conduct was such as would chill or silence a person of ordinary firmness from future First

4   Amendment activities.  *Id*. at 568-69.  Conduct protected by the First Amendment includes

5   communications that are "part of the grievance process."  *Brodheim v. Cry*, 584 F.3d 1262, 1271

6   n. 4 (9th Cir. 2009).

7          It is undisputed that the basis of the chrono was plaintiff's statement to Broyles that he

8   intended to file a staff complaint and/or a lawsuit against Broyles when Broyles refused to allow

9   plaintiff to obtain his medications early.  ECF No. 1-1 at 4-5; ECF No. 29-1 at 2, 44-46.  Broyles

10  argues that plaintiff has no evidence that Broyles authored the chrono with the intent to retaliate

11  against plaintiff or that the chrono did not advance the legitimate correctional goal of maintaining

12  prison order.  Retaliatory intent is rarely shown by direct evidence, however.  *Watison v. Carter*,

13  668 F.3d 1108, 1114 (9th Cir. 2012).  A chronology of events from which retaliation can be

14  inferred provides circumstantial evidence of retaliation.  *Id.*; *Pratt v. Rowland*, 65 F.3d 802, 806

15  (9th Cir. 1995) (stating that "timing can properly be considered as circumstantial evidence of

16  retaliatory intent").  It is undisputed that Broyles issued the chrono shortly after plaintiff

17  threatened to file a grievance against him.  This timeline raises a disputed material fact regarding

18  Broyles's intent.  Further, summary judgment is not appropriate where there is a dispute

19  regarding whether a defendant used a legitimate penological purpose as a pretext for retaliatory

20  conduct.  *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (holding that prison officials who

21  were alleged to have abused the gang validation process to retaliate against the plaintiff could not

22  assert that the validation served a legitimate penological purpose even if the inmate arguably

23  *should* have been validated absent retaliation).  That Broyles issued the chrono shortly after

24  plaintiff threatened to file a grievance against him provides some circumstantial evidence that the

25  chrono was issued to retaliate against plaintiff instead of to maintain prison order.

26         Broyles also argues that plaintiff's threat to file a grievance is unprotected by the First

27  Amendment.  Most courts that have addressed the issue have concluded that an inmate's threat to

28  file a grievance constitutes protected speech unless it is delivered in an argumentative,

1   confrontational, or disorderly manner.  *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006);

2   *Garcia v. Strayhorn*, No. 13-CV-807-BEN (KSC), 2014 U.S. Dist. LEXIS 123660, at *15-17

3   (S.D. Cal. Sept. 3, 2014) (collecting cases).  The court agrees with these authorities that a

4   prisoner's complaint does not lose its status as protected conduct simply because it is stated

5   verbally rather than submitted in writing.  *Pearson*, 471 F.3d at 741.  The evidence submitted by

6   the parties does not establish whether plaintiff stated his intent to file a grievance against Broyles

7   in a manner that would make it unprotected.  Accordingly, the court cannot grant summary

8   judgment to defendant Broyles on the ground that plaintiff's threat to file a grievance against him

9   was not protected by the First Amendment.

10        Nevertheless, defendant Broyles must be granted qualified immunity.  "The doctrine of

11   qualified immunity protects government officials 'from liability for civil damages insofar as their

12   conduct does not violate clearly established statutory or constitutional rights of which a

13   reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

14   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Resolving the defense of qualified immunity

15   involves a two-step process; the court must determine (1) whether the plaintiff has alleged or

16   shown a violation of a constitutional right, and (2) whether the right at issue was clearly

17   established at the time of defendant's alleged misconduct.  *Pearson*, 555 U.S. at 232 (citing

18   *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).  These steps may be analyzed in any order.  *Id.* at

19   236.

20        "Qualified immunity is applicable unless the official's conduct violated a clearly

21   established constitutional right."  *Pearson*, 555 U.S. at 232.  To be clearly established "[t]he

22   contours of the right must be sufficiently clear that a reasonable official would understand that

23   what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

24   "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."

25   *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Clement v. Gomez*, 298 F.3d 898, 906 (9th

26   Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at the relevant time]

27   gave 'fair warning' to the officials that their conduct was unconstitutional.") (quoting *Saucier*,

28   533 U.S. at 202).

The court reluctantly concludes that, at the time of the incident underlying this action (2008), it was not firmly established that a prisoner's threat to file a grievance (as opposed to a written grievance or lawsuit) constituted conduct protected by the First Amendment.  As was recently well-stated by another magistrate judge of this court:

> To date, neither the Supreme Court nor the Ninth Circuit has held that mere oral complaints by a prisoner can form the basis of a retaliation claim within the prison context.  *See, e.g., Teahan v. Wilhelm*, No. 06cv15 JM (PCL), 2007 U.S. Dist. LEXIS 97539, 2007 WL 5041440 at *9 (S.D. Cal. Dec. 21, 2007) ("the Ninth Circuit has never had cause to determine whether oral complaints concerning a prisoner's individual circumstances are protected by the First Amendment.").  In addition, although some unpublished decisions from this court have recognized that a prisoner's oral complaint constitute such protected conduct, there is by no means "a robust 'consensus of cases of persuasive authority'" so recognizing.  *al-Kidd*, 131 S. Ct. at 2084.  *Compare West*, 2014 U.S. Dist. LEXIS 25537, 2014 WL 794335 at *5-*6 (protected speech includes a prisoner's verbal expression of an intent to submit a formal written grievance); *Hackworth*, 2011 U.S. Dist. LEXIS 5476, 2011 WL 1811035 at *1 (rejecting defendant's argument that prisoner's verbal objections to a prison policy during housing classification committee meeting with prison staff was not protected by the First Amendment because the inmate had not filed a written grievance); *Uribe*, 2011 U.S. Dist. LEXIS 133, 2011 WL 9640 at *12 (prisoner's attempt to report a prison official's misconduct, either "verbally or in writing, constitutes speech or conduct entitled to First Amendment protection."), *with Johnson v. Carroll*, No. 2:08-cv-1494 KJN P, 2012 U.S. Dist. LEXIS 79380, 2012 WL 2069561 at *34 (E.D. Cal. June 7, 2012) (a prisoner's verbal statements and challenges made to defendant incident to challenged strip search fall outside of First Amendment protection and therefore plaintiff failed to state a First Amendment retaliation claim).  *See also McElroy v. Lopac*, 403 F.3d 855, 858-59 (7th Cir. 2005) (to support a retaliation claim a prisoner's speech "must relate to a public concern and not just a personal matter to receive First Amendment protection").

*Ahmed v. Ringler*, No. 2:13-cv-1050 MCE DAD P, 2015 U.S. Dist. LEXIS 14139, at *16-18 (E.D. Cal. Feb. 5, 2015); *see also Turner v. Zuniga*, No. CV 13-1787-MMM (AGR), 2015 U.S. Dist. LEXIS 120824, at *7-10 (C.D. Cal. Apr. 15, 2015) (granting qualified immunity to prison official because it was not well-established in 2009 that an inmate's threat to file a grievance constituted protected conduct).  Because it was not well-established in 2008 that a verbal statement of intent to file a grievance constituted conduct protected by the First Amendment, plaintiff's retaliation claim against defendant Broyles, which is based solely on such a statement, must be adjudicated in Broyles's favor on the basis of qualified immunity.

/////

/////

1          **B.  Plaintiff's Retaliation Claim against Lopez for the Counseling Chrono**

2          Defendants also argue that plaintiff cannot establish the elements of his retaliation claim

3   against defendant Lopez for issuing the counseling chrono after plaintiff threatened to file a

4   grievance against him in February 2009 after Lopez denied him dinner.

5          The court need not analyze whether plaintiff has submitted sufficient evidence to raise

6   triable issues on the elements of this claim, however, because defendant Lopez must be afforded

7   qualified immunity for the same reason discussed above with respect to defendant Broyles: it was

8   not well-established in 2009 that a prisoner's threat to file a grievance constituted conduct

9   protected by the First Amendment.  *Turner*, 2015 U.S. Dist. LEXIS 120824, at *7-10; *Williams v.*

10  *Bahadur*, No. 2:13-cv-2052-TLN-EFB P, 2016 U.S. Dist. LEXIS 24062, at *13-16 (E.D. Cal.

11  Feb. 25, 2016).  It is undisputed that the basis for this claim against Lopez is plaintiff's statement

12  that he intended to file a grievance against Lopez rather than plaintiff's written grievances against

13  Lopez (and there is no evidence that Lopez was aware that plaintiff had actually filed a written

14  grievance against him at the time he issued the chrono).  ECF No. 1-1 at 6-7 (alleging that

15  "Lopez, out of reprisal, for Plaintiff's protected speech, where Plaintiff informed defendant Lopez

16  that Plaintiff would be filing a grievance on him for refusing Plaintiff dinner . . . chilled the effect

17  and exercise of Plaintiff's First Amendment Rights . . . by concocting a false CDC-128-A

18  Counseling Chrono[.]"); *see also*  ECF No. 29 at 23 (Lopez's counseling chrono, which is

19  undated), 26 (document indicating that Lopez stated that the chrono was written on February 9,

20  2009), 42 (plaintiff's grievance against Lopez for denying him dinner, also dated February 9,

21  2009), and 21 (plaintiff's grievance against Lopez for issuing the chrono, dated February 12,

22  2009).  Because plaintiff alleges that Lopez retaliated against him for his verbal threat to file a

23  grievance rather than the filing of a written grievance, the court will grant Lopez qualified

24  immunity on plaintiff's claim against him for the February 2009 counseling chrono.

25         In addition, plaintiff cannot show any damage from Lopez's February 2009 chrono,

26  because it is undisputed that the chrono carried no attendant discipline and was removed from

27  plaintiff's file in response to plaintiff's grievance.  Plaintiff's inability to show he suffered any

28  damage as a result of the chrono provides an additional basis for summarily adjudicating this

1    claim in favor of defendant Lopez.  *Allen v. Nimrod*, No. C 91-1940 BAC, 1994 U.S. Dist. LEXIS

2    4481, at *5 (N.D. Cal. Apr. 1, 1994).

3                    **C.  Plaintiff's Retaliation Claim against Blackwell and Voight for the Cell Move**

4            Defendants purport to move for summary judgment on plaintiff's retaliation claim against

5    defendant Blackwell and Voight for placing him in an upper bunk on an upstairs floor in

6    retaliation for plaintiff's grievances against Lopez.  However, their brief gives this claim

7    remarkably short shrift.  Defendants have phrased all of their arguments generally, and, as best

8    the court can gather, the only argument advanced by defendants that could pertain to plaintiff's

9    claim regarding the cell move is that plaintiff has no evidence that these defendants put him in the

10   upper floor/upper bunk because of plaintiff's grievances against Lopez.  ECF No. 193 at 12.

11   Defendants' brief characterizes the bunk placement as an error that was corrected three days after

12   plaintiff complained about it, but defendants provide no evidence of their own pertaining to the

13   claim other than plaintiff's deposition.

14           In the deposition, plaintiff testified that he believed that he was moved in retaliation for

15   his grievances because defendants would have known from the medical chronos attached to his

16   bed card – documents defendants would have reviewed in conjunction with the move – that he

17   was not to be placed in an upper floor/upper bunk cell.  ECF No. 193-1 at 24 (plaintiff's

18   deposition, pages 74:11-75:1).  That defendants nonetheless placed plaintiff in an upper

19   floor/upper bunk cell could give rise to the inference that defendants did so for an improper

20   purpose, but there is no evidence that defendant Voight knew of plaintiff's grievances against

21   Lopez.

22           Plaintiff also indicated that additional evidence in support of his claims had been filed

23   with the court as ECF No. 29.  That filing contains an inmate appeal filed by plaintiff after the

24   cell move in which he stated that, during a different incident with Blackwell prior to the cell

25   move, Blackwell had, "on at least one occasion, in a sarcastic manner [told] me why he was doing

26   this to me, informed me that when we were finished he was going to interview me on 602's I had

27   on Sgt. Lopez."  ECF No. 29 at 14.  In the same grievance, plaintiff wrote that other inmates

28   without medical restrictions could have been moved but were not.  *Id.* at 16.  This evidence,

1   construed in the light most favorable to plaintiff, is sufficient to raise a triable issue as to whether

2   defendant Blackwell moved plaintiff to an upper floor/upper bunk in retaliation for his grievances

3   against Lopez.  However, because there is no evidence that defendant Voight knew of plaintiff's

4   protected conduct, plaintiff's retaliation claim against Voight for the cell move should be

5   summarily adjudicated in Voight's favor.

6       Defendants raise a broad argument that they should be afforded qualified immunity on all

7   of plaintiff's claims against them, but do not specifically argue why defendant Blackwell should

8   be given immunity with regard to the cell move.  Unlike the claims discussed above, it is beyond

9   dispute that a reasonable official would have known in 2009 that moving an inmate to a location

10  that was inappropriate for his medical situation in retaliation for his grievances was

11  unconstitutional.  *See Rhodes*, 408 F.3d at 567-68.  Defendant Blackwell has not shown that he is

12  entitled to qualified immunity on the claim.

13      Lastly, all defendants argue that they are entitled to immunity under the Eleventh

14  Amendment because they were acting within their official capacities during the events giving rise

15  to this lawsuit.  This argument is premised on a basic misunderstanding of § 1983 litigation, and

16  the court accordingly rejects it.

17      The Eleventh Amendment bars § 1983 damages suits against a state unless the state has

18  waived its sovereign immunity.  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989).  A

19  suit against a state official in his or her official capacity is treated as a suit against the state and is

20  thus barred by the Eleventh Amendment.  *Id.* at 71.  Similarly, a state official sued in her official

21  capacity, being treated as equivalent to the state, is not considered a "person" who may be sued

22  under § 1983.  On the other hand, "[c]learly, under § 1983, a plaintiff may sue a state officer in

23  his individual capacity for alleged wrongs committed by the officer in his official capacity."

24  *Price v. Akaka*, 928 F.2d 824, 828-29 (9th Cir. 1990).

25      Defendants' argument "confuses the capacity in which a defendant is *sued* with the

26  capacity in which the defendant was *acting* when the alleged deprivation of rights occurred.  The

27  former need not coincide with the latter."  *Id.* at 828 (emphasis added).  This distinction is crucial,

28  because § 1983 requires that defendants have acted under color of state law; that is, under the

17

authority they derive from the state when discharging official duties.  Thus, § 1983 actions inevitably allege that the challenged action was undertaken in the defendant's "official capacity." Defendants' argument, if accepted, would nullify § 1983.

To the extent that defendants argue that plaintiff has sued them in their official capacities, the court finds no support for that argument in the complaint.  The complaint instead alleges that defendants *acted* under color of state law and in their official capacities.  ECF No. 1-1 at 3, ¶ 7; *id.* at 14, ¶ 5.  By seeking damages under § 1983, plaintiff has indicated that he is suing defendants in their individual capacities.  *Price*, 928 F.2d at 828.  Plaintiff's claims for damages against defendants are therefore not barred by the Eleventh Amendment.

Because defendant Blackwell has not demonstrated the absence of a material dispute on plaintiff's claim regarding the cell move or any other basis for adjudicating the claim in his favor, this claim must proceed.

### D.  Plaintiff's Retaliation Claim against Blackwell, Lopez, and Voight for the Rules Violation Report

Defendants raise two arguments in favor of summary adjudication of plaintiff's claims against Blackwell, Lopez, and Voight for the rules violation report authored by Voight after plaintiff allegedly delayed his cell move.  First, defendants argue that plaintiff lacks evidence that his protected conduct was a substantial motivating factor for the report.  Second, defendants argue that plaintiff lacks evidence that the report was not issued for a legitimate penological purpose.

As noted in the section above, plaintiff has proffered some evidence that defendants placed him in an upper floor/upper bunk cell despite his contrary medical orders after he had filed the grievances against Lopez.  There is no question that plaintiff's written grievances constituted protected conduct.  However, plaintiff has not provided any evidence that Voight knew of the grievances when he issued the report.  Nor has plaintiff provided evidence indicating that, in issuing the rules violation report, defendant Voight was colluding or conspiring with defendants Blackwell and Lopez (for whom plaintiff has provided some evidence showing knowledge of plaintiff's grievances against Lopez).  In his deposition, plaintiff testified that the constitutional violations alleged in the complaint were based on a conspiracy among the defendants, but

1    admitted that he was speculating that there was such a conspiracy.  ECF No. 193-1 at 26-27

2    (plaintiff's deposition, pages 85:11-86:10); *id.* at 30 (plaintiff's deposition, pages 99:24-100:14).

3    Because plaintiff has not provided evidence from which a factfinder could infer that Voight knew

4    of his protected conduct when he issued the report or that Lopez and Blackwell somehow

5    colluded with Voight in issuing the report, he has failed to raise a triable issue of fact as to

6    whether these three defendants used the report to retaliate against plaintiff for his grievances.

7    Accordingly, summary judgment will be granted to defendants on this claim.

**E.  Plaintiff's Retaliation and Due Process Claims against Zuniga**

9         Defendants again argue, correctly, that plaintiff has not proffered any evidence in support

10   of his claim that Zuniga's allegedly improper conduct as plaintiff's investigative employee was

11   motivated by plaintiff's grievances against Lopez.  Plaintiff has not submitted any evidence that

12   shows that Zuniga knew of the grievances, much less that he was conspiring with other

13   defendants to retaliate against plaintiff because of them.  Accordingly, plaintiff's retaliation claim

14   against Zuniga cannot proceed to trial.

15        Defendants further argue that plaintiff's due process claim against Zuniga fails because

16   plaintiff was not deprived of any constitutionally-protected interest in the disciplinary

17   proceedings.  The court agrees.  Prisoners are entitled to certain due process protections when

18   subject to disciplinary sanctions that impinge on an interest protected by the Due Process Clause.

19   *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).  To prevail on a claim for

20   violation of the right to procedural due process under the 14th Amendment, a plaintiff must show:

21   "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of

22   adequate procedural protections."  *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003).

23        A liberty interest triggering procedural protections under the Due Process Clause may

24   arise from two sources: the Clause itself or state law.  *Chappell v. Mandeville*, 706 F.3d 1052,

25   1062 (9th Cir. 2013).  The Due Process Clause of its own force protects prisoners from conditions

26   which depart from the sentence imposed on them in a way that is "'qualitatively different' from

27   the punishment characteristically suffered by a person convicted of crime [and has] 'stigmatizing

28   consequences.'"  *Sandin v. Conner*, 515 U.S. 472, 478-79 n.4 (1995) (discussing and quoting

1   *Vitek v. Jones*, 445 U.S. 480 (1980) and *Washington v. Harper*, 494 U.S. 210 (1990)).  The

2   Clause, by itself, confers no liberty interest in freedom from state action taken within the sentence

3   imposed.  *Id.* at 480.

4        A condition of confinement impinges on an inmate's *state-law-created* liberty interest

5   (triggering the necessity for procedural protections) if it imposes an atypical and significant

6   hardship on the inmate in relation to the ordinary incidents of prison life (while not departing

7   from the sentence in such a manner as to trigger protection under the Due Process Clause by its

8   own force).  *Sandin*, 515 U.S. at 484; *Brown*, 751 F.3d at 987.  To determine whether a liberty

9   interest is at stake, the court may consider: "(1) whether the challenged condition 'mirrored those

10  conditions imposed upon inmates in administrative segregation and protective custody,' and thus

11  comported with the prison's discretionary authority; (2) the duration of the condition, and the

12  degree of restraint imposed; and (3) whether the state's action will invariably affect the duration

13  of the prisoner's sentence."  *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (citations

14  omitted).

15       The conditions imposed on plaintiff as a result of the hearing in connection with which

16  Zuniga served as investigative employee were: (1) forfeiture of 60 days' worktime credits (also

17  called worktime credits, *see* California Penal Code § 2933); (2) a loss of privileges to the

18  day/night yard, dayroom, telephones, canteen, and quarterly packages for 30 days; (3) a 90-day

19  suspension of Friday visits; and (4) plaintiff was counseled and reprimanded.  ECF No. 160 at 52.

20  Roszko argues that these disciplinary measures did not deprive plaintiff of a constitutionally-

21  protected interest.

22       Defendant is correct that, as a matter of law, these conditions do not impinge on a liberty

23  interest created by the Due Process clause of its own force.  *Wolff v. McDonnell*, 418 U.S. 539,

24  557 (1974) (good-time credits); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)

25  (unfettered visitation); *Davis v. Small*, 595 F. App'x. 689, 691 (9th Cir. 2014) (phone and yard

26  privileges); *Koerner v. Angelone*, Nos. 97-15681 & 97-15799, 1999 U.S. App. LEXIS 32181, at

27  *9 (9th Cir. Dec. 6, 1999) (canteen).

28  /////

In addition, plaintiff has failed to discharge his burden of showing that the disciplinary measures imposed as a result of the hearing impinged on a liberty interest created by state law. Plaintiff states simply that, "when prisoners lose good time credits because of a disciplinary offense, they are entitled to" procedural protections under the Due Process Clause.  ECF No. 168 at 3.  The law is not so cut-and-dried.

It is true that the Supreme Court has held that a state can create a protected liberty interest in a shortened prison sentence resulting from good time credits by making the revocation of such credits allowable only for major misconduct.  *Wolff*, 418 U.S. at 557; *Sandin*, 515 U.S. at 477-78. It is currently an open question in the Ninth Circuit whether California's scheme of worktime credits under California Penal Code § 2933, as amended in 2010, gives rise to a liberty interest. *Edwards v. Swarthout*, 597 F. App'x. 914 (9th Cir. 2014).  Absent any further direction from the Ninth Circuit, and applying the Supreme Court's holdings in *Wolff* and *Sandin*, the court finds that plaintiff here has failed to establish that the deprivation of worktime credits deprived him of a protected liberty interest because he has not provided any evidence that the credits that were revoked would have shortened his sentence if left in place.  The liberty interest recognized by the Court in *Wolff* lay in the *shortened sentence* generated by the operation of the credit statutes, not in the credits themselves.  418 U.S. at 557; *Sandin*, 515 U.S. at 477-78.  It is undisputed that plaintiff was serving a term of 25-years-to life, plus 12 years, at the time of the hearing.  ECF No. 160 at 9-10.  Plaintiff has made no showing that he would be serving a shorter prison sentence if the 60-days' worth of worktime credits had not been forfeited.  *Sandin*, 515 U.S. at 485-87 (finding that a prison disciplinary action did not impinge on a protected liberty interest where it would not inevitably affect the duration of the inmate's indeterminate sentence); *Harvey v. Lewis*, No. 1:12-cv-00904-AWI-DLB (HC), 2012 U.S. Dist. LEXIS 163667, at *5-8 (E.D. Cal. Nov. 15, 2012) (discussing the impact of good time credits on an inmate serving both a determinate and indeterminate term of incarceration).  Even if plaintiff were to make such a showing, his due process claim challenging the loss of credits would not survive in this action, as he would be required by the rule of *Heck v. Humphrey* to secure a finding that the discipline imposed by

/////

21

1   defendant Roszko was invalid through some other means before pursuing that claim in a § 1983

2   action for damages.  *Edwards v. Balisok*, 520 U.S. 641, 644-48 (1997).

3          Plaintiff has also failed to show that the remaining disciplinary measures – loss of access

4   to some facilities, telephone, canteen, and quarterly packages for 30 days and loss of Friday visits

5   for 90 days – presented an atypical and significant hardship in relation to ordinary prison life.  *See*

6   *Koerner*, 1999 U.S. App. LEXIS 32181, at *9 (80-day suspension of canteen privileges was not

7   an atypical and significant hardship); *Song v. Ignacio*, No. 96-15901, 1997 U.S. App. LEXIS

8   2217, at *2-3 (9th Cir. Feb. 7, 1997) (affirming dismissal of due process claim where the plaintiff

9   failed to allege how his temporary loss of access to the canteen, phone, showers, and recreation

10  equipment presented a dramatic departure from the basic conditions of prison life).  Plaintiff

11  provides no evidence from which the court can compare these disciplinary measures to the norms

12  of prison life, and has thus fails to provide evidence from which a rational factfinder could

13  conclude that the measures departed from those norms in such a significant way as to deprive him

14  of an interest protected by the Due Process Clause.[3]  As plaintiff has failed to show that he was

15  entitled to procedural protections at the disciplinary hearing, the court need not reach the question

16  of whether the assistance provided by Zuniga comported with due process.  *See Trujillo v.*

17  *Vaughn*, 269 F. App'x. 673, 674 (9th Cir. 2006) (noting that due process requires assignment of

18  an investigative employee only where the inmate is illiterate or the complexity of the issues

19  makes it unlikely that the inmate will be able to collect and present evidence).  Summary

20  judgment will be granted to Zuniga on plaintiff's due process claim.

21  /////

22  /////

23  /////

24  /////

25          [3] The court notes that the Ninth Circuit held in *Funtanilla v. Campbell*, No. 96-15439,
26  1996 U.S. App. LEXIS 22581, at *5-6 (9th Cir. Aug. 26, 1996) that California Penal Code § 2601
    created a liberty interest in prison visits by stating that such visits were a "civil right" of
27  prisoners.  The California legislature amended § 2601 in 1996 to delete that provision.  Plaintiff
    has not offered any other source of law from which the court can conclude that California has
28  created a liberty interest in prison visits.

**VI.    Order**

For the foregoing reasons, it is hereby ORDERED that:

1. Within thirty (30) days of this order, Jeffrey E. Beeson, Michael A. Terhorst, and/or Beeson Terhorst LLP shall pay to the Clerk of the Court $500 in monetary sanctions for their failure to comply with Federal Rule of Civil Procedure 16 and the court's scheduling order.  Counsel shall also file an affidavit accompanying the payment of this sanction which states that it is paid personally, out of personal funds, and is not and will not be billed, directly or indirectly, to the clients or in any way made the responsibility of his clients as attorneys' fees or costs.

2. Plaintiff's motions, objections, and requests appearing at ECF Nos. 197, 199, 204, 205, and 206 are denied.

3. Defendants' December 28, 2015 motion for summary judgment (ECF Nos. 193, 195) is denied as to plaintiff's claim that defendant Blackwell unlawfully retaliated against him by placing him in an upper floor/upper bunk cell and is granted as to all remaining claims and defendants.

4. The case has been randomly assigned to the Honorable Gregory G. Hollows for a settlement conference on January 5, 2017 at 9:00 a.m. in Courtroom No. 9, 13th Floor. Counsel are directed to submit settlement conference statements to the settlement judge not later than seven (7) days prior to the conference.  At counsel's option, such statements may be submitted in confidence pursuant to Local Rule 270(d).  Each party is directed to have a principal capable of disposition at the Settlement Conference or to be fully authorized to settle the matter on any terms and at the Settlement Conference.

DATED:  August 3, 2016.

_Edmund F. Brennan_
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE